2026 Tex. Bus. 41



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| JEAN CHRISTINE THOMPSON and THOMPSON PETROLEUM CORPORATION, *Plaintiffs* | § § § § | |
| | § | Cause No. 25-BC01B-0038 |
| v. | § § | |
| ANCHOR CAPITAL GP LLC and MICHAEL MANN, *Defendants* | § | |

---

**NUNC PRO TUNC
MEMORANDUM OPINION AND ORDER ON
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[¶ 1]  This case is about whether defendants breached various duties owed to plaintiffs under a promissory note (Note),[1] security agreement, and employment agreement.  Before the court is Defendants' Motion for Partial

---

[1] The promissory note was later amended and reinstated following an additional loan. However, both the original and amended notes were cumulatively entered for the same general purpose.  So, references to the Note included within this opinion encompass both notes.

Summary Judgment. The court considered the parties' pleadings, submissions and oral arguments.

[¶ 2] The pivotal issue is whether the Note is a "security" under the Texas Securities Act (TSA). After applying the Supreme Court's test in *Reves v. Ernst & Young*, 494 U.S. 56, 63-64 (1990), the court concludes that the Note is not a TSA security. Accordingly, the court grants defendants' motion.

[¶ 3] The parties are familiar with the facts the court discussed in its May 4, 2026, Memorandum Opinion and Order on Plaintiffs' Motion for Summary Judgment. So, the court focuses on only those facts relevant to this opinion.

## I. BACKGROUND

### A. Factual Background[2]

#### 1. The Parties

[¶ 4] Jean Thompson is an owner and President of Thompson Petroleum Corporation (TPC).[3]

---

[2] These facts came from evidence contained in the Appendix to Plaintiffs' Traditional Motion for Partial Summary Judgment (Motion Appx.), which is included in the same document file as Plaintiffs' Motion, unless otherwise stated.
[3] Motion Appx. at 544.

[¶ 5]  TPC is a family business that manages the Thompson family's assets and employs the J. Cleo Thompson Family Office's personnel.[4]

[¶ 6]  Michael Mann is the founder and CEO of defendant Anchor Capital GP LLC, a private equity investment brokerage comprised of Anchor and various subsidiaries.[5]

## 2. Thompson and Mann form a business relationship.

[¶ 7]  Thompson and Mann met in 2022, after which Mann began offering her investment advice on alternative investments.[6]  Using Christy 2017, a holding company for the Thompson family's investments, Thompson began investing millions into Anchor-managed funds.[7]

[¶ 8]  In September 2024, Mann asked Thompson to loan Anchor money so he could buy out one of Anchor's partners.[8]  She agreed contingent upon Mann providing a personal financial statement and loan guarantee.[9] Mann signed a Secured Promissory Note, Security Agreement, and Mann's Personal Guaranty to memorialize this agreement.[10]

---

[4] Motion Appx. at 544.
[5] Motion Appx. at 545.
[6] Motion Appx. at 545.
[7] Motion Appx. at 545.
[8] Motion Appx. at 67.
[9] Motion Appx. at 546.
[10] Motion Appx. at 69–89.

[¶ 9]  The parties amended this agreement three months later after Mann requested additional funds to buy out another Anchor partner.[11]

[¶ 10]  On May 5, 2025, Thompson exercised her rights to inspect the Collateral to verify that her loans to Anchor were adequately protected.[12]  To that end, she asked Anchor for access to its "books and records."[13]

[¶ 11]  Throughout that month, the parties communicated about the books and records request.[14]  But by early June, Thompson claimed that Anchor failed to produce the requested information.[15]  Approximately two weeks later, her outside counsel sent a letter requesting additional documents and answers to specific questions.[16]

[¶ 12]  Mann sent multiple replies but refused to provide an audited personal financial statement that Thompson requested.[17]  So, in late June, Thompson's counsel sent another letter about these issues.[18]  When Mann

---

[11] Motion Appx. at 547.
[12] Motion Appx. at 378–79.
[13] Motion Appx. at 79.
[14] *See* Motion Appx. at 381–86.
[15] Motion Appx. at 62–63.
[16] Motion Appx. at 395.
[17] *See* Motion Appx. at 398, 400–01.
[18] Motion Appx. at 404–05.

didn't respond, counsel sent another letter a week later, detailing the precise list of necessary, outstanding documents.[19]  Counsel sent two more letters.[20]

[¶ 13]  Plaintiffs claim that defendants have not cured any outstanding deficiencies highlighted in their last letter, which they say are an Event of Default under both the Note and Security Agreement.[21]  So, on July 22nd, Thompson sent Anchor a default notice and accelerated the loan.[22]

## B. Procedural Background

[¶ 14]  Plaintiffs sued the next month,[23] and Defendants answered[24]. Plaintiffs later filed their First Amended Petition.[25]  Defendants then filed this motion,[26] which plaintiffs opposed.[27]

---

[19] Motion Appx. at 411–20.
[20] Motion Appx. at 421–49
[21] Motion Appx. at 554–55.
[22] Motion Appx. at 450–52.
[23] *See generally* Plaintiffs' Original Petition (POP).
[24] *See generally* Defendants' Original Answer, Affirmative and Other Defenses, and Request for Attorneys' Fees (Orig. Answer).  Defendants later filed counterclaims but none are at issue for purposes of this motion.  *See generally* Defendants' First Counterclaims Against Plaintiffs.
[25] *See generally* First Amended Petition (FAP).
[26] *See generally* Defendants' Motion for Partial Summary Judgment (MPSJ).
[27] *See generally* Plaintiffs' Response to MPSJ (MPSJ Response).

## II.  APPLICABLE LAW

### A. Summary Judgment Standards

[¶ 15]  At any time, a party may move with or without supporting evidence for a summary judgment as to all or any part of any causes of action asserted against it.  TEX. R. CIV. P. 166a(b).  The motion must state its specific grounds.  *Id.* at 166a(c).

[¶ 16]  Thereafter, the court *shall* render judgment if the pleadings, summary judgment filings, and properly filed evidence show that, except as to the amount of damages, there is no *genuine* issue as to any *material* fact and the movant is entitled to judgment as a matter of law on the issues stated in the motion or in an answer or any other response.  *Id.*; *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

[¶ 17]  A court can grant a movant's traditional summary judgment only if the movant's evidence as a matter of law either proves all elements of its defense or disproves at least one element of the nonmovant's claim.  *See e.g.*, *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995) (causation disproved as a matter of law).

[¶ 18]  So a summary judgment motion

...is essentially a motion for a pretrial directed verdict. * * * Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. * * * [Courts] review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. * * *

*Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006) (citations omitted).

[¶ 19]  A genuine fact issue exists if more than a scintilla of evidence supports the alleged fact. *See Amazon.com Servs. LLC v. Grant*, No. 05-23-01306, 2024 WL 5053063, at *2 (Tex. App.—5th Dist. Dec. 10, 2024, no pet.).  Evidence is more than a scintilla when it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.3d 706, 711 (Tex. 1997)).  However, less than a scintilla exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact.  *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

[¶ 20]  When a contract's terms are unambiguous and the material facts are undisputed, compliance with those terms is a question of law.  *Hrdy v.*

*Second St. Props.*, 649 S.W.3d 522, 554 (Tex. App.—1st Dist. 2022, pet. denied).

[¶ 21] Accordingly, to decide this motion, the court must apply contractual construction principles to the Note and Security Agreement, Guaranty, Employment Agreement, the parties' submissions, and the summary judgment evidence.

## B. Contract Construction

[¶ 22] A court's primary objective when construing contracts "is to ascertain and give effect to the parties' intent as expressed in the instrument." *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018)).

[¶ 23] Usually, courts deem the contract alone to express the parties' intent because it is objective, not subjective, intent that controls. *Id.*

[¶ 24] With unambiguous contracts, courts "can determine the parties' rights and obligations under the agreement as a matter of law." *Inwood Nat'l Bank v. Fagin*, No. 24-0055, 2025 WL 349890, at *4 (Tex. 2025) (per curiam) (quoting *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

## C. Statutory Construction

[¶ 25] A court's primary purpose in statutory construction is to implement the Legislature's intent by giving effect to every word, clause, and sentence. *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689-90 (Tex. 2020) (citation omitted). Indeed, statutory text is the "first and foremost" indication of legislative intent. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). Thus, courts apply the words' common, ordinary meaning unless (i) the text supplies a different meaning or (ii) the common meaning produces absurd results. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

[¶ 26] Further, courts derive statutory meaning from the entire statute. TEX. GOV'T CODE § 311.021(2); *Janvey v. Gold Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). So, courts "presume the Legislature chose statutory language deliberately and purposefully," *Crosstex Energy Servs. L.P., v. Pro Plus, Inc.*, 439 S.W.3d 384, 390 (Tex. 2014), and that it likewise excluded language deliberately and purposefully, *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

## III. ANALYSIS

### A. Introduction

[¶ 27]  Defendants sought the following summary judgment rulings: (i) Thompson's Texas Securities Act claim (Count 3) fails because the Note is not a security, and (ii) Thompson's Breach of Guaranty claim (Count 2) fails because the Guaranty did not require Mann to audit his personal financial statement.[28]

[¶ 28]  Plaintiffs responded that the court should deny the motion because (i) the Note is presumed a security, and defendants failed to rebut that presumption; and (ii) fact issues preclude summary judgment on a guaranty claim.[29]

[¶ 29]  In a separate, June 18, 2026, order the court concluded that the Guaranty did not require Mann to provide an audited personal financial statement.[30]  Thus, the only remaining issue is whether the Note is a security.

---

[28] *See generally* MPSJ.
[29] *See generally* MPSJ Response.
[30] *See generally* June 18, 2026, Order on Defendants' Motion for Reconsideration.

**B. Securities Act Claim**

**1. Introduction**

[¶ 30]   The TSA[31] creates civil liability for a person who offers or sells a security by means of an untrue statement of material fact or by means of a material misleading, omission of fact.  TEX. GOV'T CODE § 4008.052(a).

[¶ 31]   The TSA broadly defines "securities."   *See* TEX. GOV'T CODE § 4001.068(a).

[¶ 32]   Determining whether documents are TSA securities is a matter of law.  *Grotjohn Precise Connexiones Intern., S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 868 (Tex. App.—6th Dist. 2000, no pet.).  Because the TSA closely mirrors the Federal Securities Act of 1933, Texas courts look to federal decisions to aid Texas's interpretation of the TSA.  *See Searsy v. Com. Trading Corp.*, 560 S.W.2d 637, 639 (Tex. 1977).

**2. Parties' Arguments**

[¶ 33]   Defendants argue that the Note is merely a "commercial loan transaction" as opposed to a "security" and thus falls outside the TSA's

---

[31] The Texas Securities Act was recodified in 2022 under Texas Government Code §§ 4000.001 *et seq.*  However, the recodification merely restates former Texas Civil Statutes article 581, so all cases analyzing the prior statute still hold full force and effect.

purview.[32]  Plaintiffs respond that the Note is presumed a security under the Supreme Court's adopted "family resemblance" test.[33]  Defendants' reply asserts that the "commercial versus investment" test is the proper test, but applying the "family resemblance" test produces the same result[34]

[¶ 34]  Accordingly, the court must determine the proper test before addressing the issue's merits.

### 3.  Securities Tests

[¶ 35]  Since the Securities Act of 1933's passage, courts have devised multiple approaches to determine whether promissory notes are "securities." *Reves*, 494 U.S. at 63-64.  Specifically, *Reves* discussed three such approaches various federal circuits had adopted:  (i) the "investment versus commercial" test, (ii) the "family resemblance" test, and (iii) the Court's *Howey* test.

### a.  "Investment versus Commercial" Test

[¶ 36]  Under the "investment versus commercial approach" courts distinguish, upon the totality of the circumstances, notes issued in investment contexts (securities) versus notes issued in commercial or consumer contexts

---

[32] MPSJ at 6–7.
[33] MPSJ Response at 17–18.
[34] Reply in Support of Defendants' Traditional Motion for Partial Summary Judgment (MPSJ Reply) at 4–6.

(non-securities).  *Id.*  This test focuses on the degree to which the plaintiff depends on the expertise and efforts of others rather than the instruments' nature. *See Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 40-41 (1st Cir. 1985) (adopts investment/commercial test because it focuses on disclosures and that securities laws were designed to offer protections through disclosures).

### b.  "Family Resemblance" Test

[¶ 37]  The "family resemblance test" presumes that *any* note with a term of more than nine months is a security.  *Reves*, 494 U.S. at 63 (citing *Exchange Nat. Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2nd Cir. 1976)).  However, that test judicially excepts certain notes that are obviously not securities, such as (i) notes delivered in consumer financing, (ii) notes secured by home mortgages, (iii)  short-term notes secured by liens on a small business or some of its assets, (iv) notes evidencing a "character" loan to bank customers, and (v) notes formalizing open-account debts incurred in the ordinary course of business.  *Exchange Nat. Bank*, 544 F.2d at 1138.

[¶ 38]  Further, that test allows parties to rebut the presumption if they can show the note either (i) "bears a strong family resemblance" to an item on

the list of exceptions or (ii) convinces the court to add a new instrument to the list. *Reves*, 494 U.S. at 64.

### c. *Howey* Test

[¶ 39]   The United States Supreme Court developed the *Howey* Test to determine if an instrument was an "investment contract," but some courts later expanded its application to determine whether an instrument is a "note." *Id.*  Under this test, a note is effectively presumed to *not* be a security unless it evidences "(1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits, (4) to be derived from the entrepreneurial or managerial efforts of others." *Id.*

### d. Adopted Test

[¶ 40]   After analyzing all three tests, and noting that the "family resemblance" and "investment versus commercial" tests formulate the same general approach, the *Reves* Court rejected the *Howey* test and adopted the "family resemblance" test. *Id.* at 64-65.

[¶ 41] Texas courts followed and also adopted the "family resemblance" test as the controlling test on this issue.[35]  *Campbell v. C.D.*

---

[35] *Reves* and its progeny are narrowly tailored to determining whether notes are securities. The court's analysis is thus limited to this issue and does not express any views on cases

*Payne & Geldermann Sec., Inc.*, 894 S.W.2d 411, 418 (Tex. App.—7th Dist. 1995, writ denied); *Grotjohn*, 12 S.W.3d at 868.

[¶ 42]   Accordingly, this court applies the "family resemblance" test.

### 4.  "Family Resemblance" Test

#### a.  Applicable Law

[¶ 43]   To prevail under the "family resemblance" test, the movant must rebut the note's presumed security status by showing the note (i) is an enumerated judicial exception or (ii) bears a strong family resemblance to one of the exceptions.  *Reves*, 494 U.S. at 64.

[¶ 44]   Courts apply four factors when analyzing whether the note bears a family resemblance to one of the enumerated exceptions.  First, courts consider the parties' motivations for entering into the transaction.  *Id.* at 66. Evidence that the note is for an investment purpose as opposed to a commercial or consumer purpose suggests that the note is a security.  *Id.* Second, courts examine the "plan of distribution" to determine whether it is

---

applying or analyzing tests on instruments aside from notes.  *See e.g.*, *SEC v. Barton*, 135 F.4th 206, 215-17 (5th Cir. 2025) (applying *Howey* test after concluding loan agreements were investment contracts); *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 684 (Tex. 2015) (applying *Howey* test after determining life settlement agreements are investment contracts); *Christie v. Hahn*, No. 05-20-01045-CV, 2022 WL 3572690, at *4 (Tex. App.— 5th Dist. Aug. 19, 2022, no pet.) (mem. op.) (declining to apply *Reves* after concluding note was an investment contract).

an instrument where there is common trading for speculation or investment. *Id.* Third, courts look to the investing public's reasonable expectations. *Id.* Finally, courts examine whether there are risk-reducing measures in place thereby mitigating the need for statutory protections. *Id.* at 67.

### b. "Short-Term" Note Analysis

[¶ 45]   Preliminarily, defendants assert that the Note is "a short-term note secured by a lien on a small business or some of its assets" thereby avoiding the need to analyze the "family resemblance" test's factors.[36] Because the parties agree that the Note is secured by Anchor's assets as Collateral, the only relevant question is whether the Note is "short-term."[37]

[¶ 46]   Neither the TSA nor its federal analogues expressly define the phrase "short-term" regarding securities or other instruments. However, the statutes suggest that short-term notes are nine months or less. *See* TEX. GOV'T CODE § 4005.055(1)(B) (exempting commercial paper with repayment obligation of less than nine months); 15 U.S.C. § 78c(a)(10) ("[t]he term 'security'...shall not include currency of any note...which has a maturity at

---

[36] MPSJ at 7.
[37] *See* MPSJ at 6; MPSJ Response ¶4.

the time of issuance not exceeding nine months[.]”).  This approach tracks the

common industry short-term paper definition.[38]

[¶ 47]   Here, the Note has a four-year maturity.[39]  So, it is not a “short-term” note nor excepted from the “family resemblance” test.  Accordingly, the court applies the “family resemblance” test.

### c. *Reves* Factors Analysis

[¶ 48]  Because Plaintiffs’ response conceded that the “plan of distribution” factor (Factor 2) supports Defendants,[40] the court need consider factors pertaining to only (i) the parties’ motives (Factor 1), (ii) the investing public’s reasonable expectations (Factor 3), and (iii) the presence of risk-reducing measures (Factor 4).

### 1) Party Motives

[¶ 49]   The first factor considers both parties’ purpose for entering into the Note transaction.  *Grotjohn*, 12 S.W.3d at 868.  If the note’s purpose is to raise money for the business enterprise’s use and the lender seeks to profit off the note, it is likely a security.  *Id.*  However, if the note’s purpose is to

---

[38] *See* James Chen, *Short-Term Paper*, https://www.investopedia.com/terms/s/short-term-note.asp# (last visited June 24, 2026).
[39] Appendix to MPSJ (MPSJ App.) at 38-39.
[40] MPSJ Response at 20.

generally advance some commercial or consumer purpose, the note is likely not a security. *Id.*

[¶ 50] Here, Thompson is entitled to accruing interest on the Note, which the *Reves* court held is included in the definition of "profit." *Reves*, 494 U.S. at 68 n.4. But Thompson admitted that she agreed to the Note at a below-market rate and under a borrower-friendly payment schedule.[41]

[¶ 51] Thus, while she is entitled to interest, that the Note was favorable *to the borrower* as to both payment terms and interest rate suggests profit was not her primary motive. *Cf. Grotjohn*, 12 S.W.3d at 869 (favorable interest rate indicated profit was lender's primary motivation); *SEC v. Thompson*, 732 F.3d 1151, 1162-63 (10th Cir. 2013) (attractive interest rate suggests profit was primary motive). These facts slightly suggests the Note is not a TSA security.

[¶ 52] However, Mann admits that he used the Note to raise capital to avoid diluting Anchor's existing equity investor.[42] More specifically, Mann said that the Note's funds were used to help grow the business by paying

---

[41] Appendix to Plaintiffs' Motion for Summary Judgment (MSJ App.) at 546.
[42] Appendix to MPSJ Response (MPSJ Response App.) at 61-63.

salaries and other standard business expenses.[43]  Together, these facts suggest

the Note is a security.  *See Aubrey v. Barlin*, 159 F.Supp.3d 752, 755 (W.D.

Tex. 2016) (notes likely security because funds used for general business

purposes).

[¶ 53]  Thus, the borrower's and seller's motives are mixed.  But

because Mann's motives are clearly for investment purposes, this factor favors

the Note being a security.  *See Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808,

812-13 (2d Cir. 1994) (buyer's clearer motives suggest note is a security).

### 2) Investing Public's Reasonable Expectations

[¶ 54]  The third factor considers how the investing public would

reasonably view a note.  *Reves*, 494 U.S at 58-59.  Courts analyzing this factor

consider the (i) note's express language, (ii) notes' advertisement, and

(iii) parties' sophistication.  *See Kirschner v. JP Morgan Chase Bank, N.A.*, 79

F.4th 290, 308 (2d. Cir. 2023).  Here, these considerations suggests that the

Note is not a security.

[¶ 55]  For starters, the Note is entitled a "Secured Promissory Note,"

which without more does not give rise to public expectations that the Note is

---

[43] MPSJ Response App. at 63.

a security.[44] *Cf. Grotjohn*, 12 S.W.3d at 669-70 (convertible debenture altered investing public's expectations surrounding instrument). There are also no references to "investors" or "investments" in the Note to suggest that the Note is a security. *See Kirschner*, 79 F.4th at 308 (isolated references to "investors" insufficient to create reasonable expectation instruments were securities). Instead, the instruments at issue frequently refer to the funds associated with the Note as a loan.[45]

[¶ 56] Second, there is no evidence suggesting that the Note was ever advertised as an investment. When a note is advertised as an investment, "in the absence of contrary indications it is reasonable for prospective purchasers to take the offeror at its word." *Stoiber v. S.E.C.*, 161 F.3d 745, 751 (D.C. Cir. 1998) (quoting *Reves*, 494 U.S. at 69) (internal citations omitted). Conversely, when express disclaimers are made indicating the note is not an investment, the investing public can reasonably conclude that the note is not a security. *Id.* Because there is no evidence suggesting the Note was ever

---

[44] *See* MPSJ App. at 38.

[45] *See* MPSJ App. at 17–22, 29–30, 38–39. Additionally, the Note includes an ambiguous disclaimer (in bold at the top of the instrument) stating that "this note has not been registered under [any securities laws] and may not be sold without registration."

advertised as an investment, the investing public lacks a reasonable basis to conclude the Note is a security.

[¶ 57]   Finally, there is no dispute whether these are sophisticated businesspersons as they are actively involved in handling finances and represented by sophisticated counsel.  So, the court can reasonably conclude the parties had a solid understanding that the Note was a loan and not a business enterprise investment.  *See Banco Espanol de Credito v. Sec. Pac. Nat. Bank.*, 973 F.2d 51, 55 (2d Cir. 1995) (parties' sophistication ensured ample notice given to instruments' purpose).

[¶ 58]   Based on the forgoing, the investing public would not reasonably view the Note as an investment.  Accordingly, this factor weighs against the Note being a security.

### 3) Risk-Reducing Measures

[¶ 59]   The final factor considers whether there are schemes in place that reduce the instrument's risk and thereby moot the need for securities protections.  *Reves*, 494 U.S. at 67.

[¶ 60]   Here, the Note is both collateralized and personally guaranteed by Mann.[46]  Further, the Note contains extensive representations, warranties, and covenants which provide additional protections.[47]  And the agreements gave Thompson rights to inspect the collateral and require Mann to provide her with financial information in a form and substance reasonably acceptable to her.[48]

[¶ 61]   Having multiple risk-reducing measures in place strongly suggests the Note is not a TSA security.  Accordingly, this factor also weighs against the Note being a security.

### 4) Conclusion

[¶ 62]   Based on the above *Reves* analysis, the court concludes as a matter of law that the Note is not a security  While the first factor leans toward the Note being a security, the other three factors support that the instrument in question is not a security.

---

[46] MPSJ App. at 17, 29.
[47] *See* MPSJ App. at 8–9.
[48] MPSJ App. at 31–32.

## IV. CONCLUSION

[¶ 63] Consistent with this opinion and its prior June 18 order, Defendants' Traditional Motion for Partial Summary Judgment is GRANTED.

So ORDERED.

_BILL WHITEHILL_
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: July 1, 2026

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 116876889
Filing Code Description: No Fee Documents
Filing Description: Nunc Pro Tunc Memorandum Opinion & Order on Defendants' Motion for Partial Summary Judgment (citation correction)
Status as of 7/2/2026 10:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alex More | | amore@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Monica E.Gaudioso | | mgaudioso@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Robert C.Rowe | | rrowe@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Aaron C. O'Dell | | Aaron.ODell@winstontaylor.com | 7/2/2026 9:51:03 AM | SENT |
| Sarah Frisbee | | sfrisbee@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Nathaniel R.Lee | | nathan.lee@winstontaylor.com | 7/2/2026 9:51:03 AM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 7/2/2026 9:51:03 AM | SENT |
| Marco Plata | | mplata@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Docket South | | ecf_houston@winston.com | 7/2/2026 9:51:03 AM | SENT |
| Angie Barrera | | abarrera@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Jamie Vargo | | jamie.vargo@winstontaylor.com | 7/2/2026 9:51:03 AM | SENT |
| Lance Currie | | lcurrie@ccsb.com | 7/2/2026 9:51:03 AM | SENT |
| Michael Pezzulli, Jr. | | michael.pezzulli@winstontaylor.com | 7/2/2026 9:51:03 AM | SENT |
| Sherry Stewart | | sstewart@ccsb.com | 7/2/2026 9:51:03 AM | SENT |